L. FRANKLIN *v.* HENRY HERSCH and others.

## October Term, 1877.

ELECTION BETWEEN LAW AND EQUITY — SPECIAL ELECTION. — Upon the
motion of the defendants, after the filing of their answers, to require the
complainant to elect between this suit and a prior action at law, it appeared
that the defendants, four in number, had conveyed in mortgage, to secure
a note of even date for a specified amount, at six months, a stock of dry
goods, with fixtures, and a stock of fruits, confectioneries, etc., with fixtures,
with power in the mortgageors to remain in possession and carry on the
business, provided the stocks were kept up, and that the bill was filed to
foreclose these mortgages, and that the action pending at law was against
two of the defendants for a balance of debt due by note and account.
*Held,* that the complainant might make a special election to proceed at law
to try his legal right, and in this court to establish his equitable lien, in
which event the trial of this suit would be suspended until the legal right
was ascertained; or the complainant might elect to proceed altogether in
this court, in which event the action at law would be enjoined until the
hearing of this cause.

*Helms & Hicks,* for complainant.
*Brien,* for defendants.

THE CHANCELLOR : — The motion of the defendants is, that the complainant be required to elect between this suit and an action at law upon the same demand. On the hearing of the motion, the case made seemed to be the ordinary one of a mortgagee pursuing his distinct remedies at law and in equity at the same time. Upon examination, however, the facts raise questions of grave difficulty.

On June 18, 1875, the defendants conveyed to the complainant, in mortgage to secure a note of even date, at six months, for $653.71, a stock of dry goods, with fixtures, and a stock of fruits, confectioneries, etc., with fixtures, in two different stores in Nashville. The deed stipulates that the mortgageors are to remain in possession of said stores and stocks of goods, "and carry on the business at the two different places," provided the stocks be kept up, and not reduced below the valuation thereof without the consent of the grantee, and then only as payments may be made upon the note. On January 5, 1877, this bill was filed to enforce the mortgage-security for a balance of debt of $239.87, about $100 of which being for goods furnished by complainant to keep up the stock, "under .the express agreement that it was to become a part of the mortgage-debt." An answer has been put in, denying that the defendants are indebted to the complainant in any sum, asserting that the debt secured by the deed has been paid in full, and claiming that if the complainant has any balance of debt due him from the defendants, such balance is not covered by the mortgage. The answer further states that, prior to the filing of the bill, the complainant brought an action at law against the defendant Henry Hersch for the identical demand on which the bill is based, which action is still pending. The action at law was commenced before a justice of the peace, " in a plea of debt by note and account," by warrant issued against the four defendants, but executed on only two of them, viz., Henry Hersch and Mary Hersch. The justice rendered judgment in favor of the complainant against these two defendants, from which

they appealed to the Circuit Court, where the action is still pending.

The eighteenth order of Lord Bacon is in these words: " Double vexation is not to be admitted; but if the party sue for the same cause at common law and in chancery, he is to have a day given to make his election where he will proceed, and in default of such election, to be dismissed." Beames's Ord. in Ch. 11. Under this order, it has become the practice of the court, where the plaintiff is suing the defendant both at law and in equity at the same time, for the same matter, to require him, upon the application of the defendant, to elect whether he will proceed with the suit in equity or with the action at law. But the case of a mortgagee seems to be an exception to the rule, and it is frequently said that he may pursue all his remedies concurrently. *Booth* v. *Booth*, 2 Atk. 343; *Schoole* v. *Sall*, 1 Sch. & Lef. 176; *Hughes* v. *Edwards*, 4 Wheat. 494. " The court," says Lord Chancellor Erskine, " in one respect does not act altogether up to its own principle in the case of a mortgage. The mortgagee takes a double security, — the personal covenant of the mortgageor, and usually a bond also, and a pledge of the estate. If, before he files a bill of foreclosure, he sues upon the bond, or brings an ejectment, the court will not stop any of his remedies." *Perry* v. *Barker*, 13 Ves. 205. The reason of the exception is nowhere clearly stated. " Whether this exception," says Mr. Daniel, 2 Ch. Pr. 818, " depends upon a peculiar privilege of a mortgagee, or upon the nature of a foreclosure suit, does not seem clear." And Lord Langdale, as Master of the Rolls, refused to extend the exception to the case of a vendor who had commenced an action at law upon a bond for the unpaid purchase-money of land, and at the same time was suing in equity to establish a lien upon the land for the same debt. *Barker* v. *Smark*, 3 Beav. 64. If the reason of the exception is to be sought in the nature of the remedy by strict foreclosure, it has ceased to

exist with the remedy, where, as in this state, the only remedy of the mortgagee is, like that of the vendor, to have a sale of the property in satisfaction of the debt. As long as equity went no further than to exhaust the security, a substantial reason might be found in the fact that the security might prove inadequate, — a reason, however, which would equally apply to the vendor's equity. If the creditor were prevented from suing at law, he would be deprived of the opportunity of placing himself on an equality with other creditors by means of a judgment-lien for the excess of his debt beyond the security. It was precisely upon this ground that Lord Hardwicke placed his decision in *Barker* v. *Dumarsque*, 2 Atk. 119, also reported in Barn. Ch. 277, under the style of *Barker* v. *Dumeres*. There, a creditor had filed his bill against an administrator, for discovery of assets and relief, and afterwards brought his action at law against the administrator on the same debt. The defendant having obtained the usual order that the plaintiff make his election, the plaintiff moved to discharge the order, showing, on the hearing, that the defendant was seeking to give the preference to other creditors by confessing judgments in their favor. The lord chancellor thought the conduct of the defendant took the case out of the ordinary rule, and gave the plaintiff leave to make a special election, viz., "to proceed at law to recover judgment, with a stay of execution, and likewise to proceed in this court for a discovery and an account of assets." But this reason has also ceased to be operative in mortgage-suits since the courts, either by statute or rule of court, have undertaken to give a decree for the mortgage-debt, and execution for the amount remaining unpaid by the mortgage-security. *Mitchell* v. *McKinny*, 6 Heisk. 85 ; Equity Rule No. 92, for the courts of the United States.

It may be doubted, therefore, whether the exception in favor of a mortgagee any longer prevails, under the maxim "*Cessante ratione cessat et ipsa lex.*" But, even in that view,

it would not follow that the rule of election would necessarily apply. There were exceptions to its rigid enforcement, outside of the case of a mortgagee, of which we have an instance very much in point in *Barker* v. *Dumarsque,* just cited. Other instances of special election are found in the books. Thus, in an anonymous case in 1 Vern. 105, it was held that if the bill be for land, and to have an account for the mesne profits, the plaintiff may elect to proceed in an ejectment at law for the possession, and in equity upon the account. The extent of this ruling was doubted in *Dormer* v. *Fortescue,* 3 Atk. 129, the lord chancellor thinking that the election should be rigidly enforced "where there is no mixture of equity" in the account sought, but its correctness was conceded on a proper state of facts. To the same effect are *Trimleston* v. *Kemmis,* L. & G. *temp.* Sugd. 29 ; *Joyce* v. *Barker,* 1 Dick. 182 ; *Romeilly* v. *Gibert,* 2 Fowler Ex. Pr. 404. In *Royle* v. *Wynne,* 1 Cr. & Ph. 256, Lord Cottenham draws the distinction between the two classes of cases, and gives the reason. "There is," he says, "another class of cases which are not, properly speaking, cases of election, where the proceeding at law is ancillary to that in equity. In those cases, the court has a discretionary power to mould the proceedings with a view to its own decree, and, for that purpose, may retain the bill until the action shall have been disposed of. That is the course frequently adopted on motions for an injunction, where it appears that there is a legal question to be tried before the court can make a decree. In such cases, it is the constant practice to direct that an action shall be brought, retaining the bill in the meantime. And, upon the same principle, if in such case the court found an action, already commenced which would ascertain the legal right, it would allow such action to proceed without dismissing the bill." In fine, to use the language of Lord Eldon, "there is no case in which the court would not modify the rule according to circumstances." *Carwick* v. *Young,* 2 Swans. 243.

The motion to put a plaintiff to his election was, under the English practice, one of course, after answer and the lapse of time allowed for exceptions thereto. Anonymous, 1 Ves. jr. 91. And if, upon the complainant's motion to discharge the order, the fact was admitted that the two suits were for the same matter, or there should be no difficulty in deciding the question, the court will act without a reference. *Young* v. *Lucas*, 1 Ves. & Bea. 383, note ; *Hogue* v. *Curtis*, 1 Jac. & W. 430. In other cases, a reference would be made to the master. *Boyd* v. *Heinzelman*, 1 Ves. & Bea. 381. In this country, the motion to elect is not of course, but made to the court. *Rogers* v. *Vosburgh*, 4 Johns. Ch. 84. That has always been the practice in this state.

In the case before us, it is conceded that the demand sued on at law is the same demand upon which the bill is based. The defendants expressly deny their liability for any part of it, and also deny that the demand, if established to any extent, is covered by the mortgage. The legal question of debt or no debt is involved in both suits. It is precisely the case put by Lord Cottenham, where the court finds an action already commenced which would ascertain the legal right, and which it would allow to proceed without dismissing the bill. It would never do to allow both suits, so far as this legal right is concerned, to proceed to trial. "For," to use the words of Lord Manners, "the jury may find a verdict one way, and the master make a report a different way, which would occasion such a clashing of jurisdiction as never could be endured." *Mocher* v. *Reed*, 1 Ball & B. 320. On the other hand, the complainant's equitable right under the mortgage, if he have any, can only be enforced in this court. It is manifestly a case where the court ought to "modify the rule according to the circumstances."

The complainant may, therefore, make a special election to proceed at law to try his legal right, and in this court to establish his equitable lien. If he do so elect, the trial of

this suit will be suspended until the legal right has been ascertained. If he prefer, he may elect to proceed altogether in this court, in which event the action at law will be enjoined until the hearing of the cause.

The complainant must bear in mind that his action at law is not against all of the defendants to this suit; and, on the other hand, that his demand may not, in whole or in part, be covered by the mortgage, and that the mortgage itself may not be enforceable in this court. *Phelps* v. *Murray*, 2 Tenn. Ch. 746. I express no opinion on these points.